# IN THE COURT OF APPEALS OF IOWA

No. 16-0189
Filed October 26, 2016

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**GERALD ANTHONY DAVIS,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Emmet County, David A. Lester (plea) and Nancy L. Whittenburg (sentencing), Judges.

　　　　Following his plea of guilty to lascivious acts with a child, Gerald Davis appeals the sentence imposed. **AFFIRMED.**

　　　　Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, Kristin Guddall, Assistant Attorney General, for appellee.

　　　　Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Gerald Davis seeks resentencing, claiming the district court abused its discretion by considering "the unproven original charge of third-degree sexual abuse when sentencing [him] on the amended charge of lascivious acts with a child." Finding no abuse of discretion, we affirm.

## I. Facts and Prior Proceedings

According to the minutes of testimony, during Davis's January 2015 interview with police officers, he admitted having sexual contact with S.A. on two occasions. In February, the State charged Davis with two counts of sexual abuse in the third degree, in violation of Iowa Code section 709.4(2)(b) (2013). The trial information alleged the crimes occurred in July or August 2014, when Davis was nineteen and S.A. was thirteen years old.

On October 14, 2015, Davis entered a written plea to one count of the amended charge of lascivious acts with a child in violation of Iowa Code section 709.8(1)(c) (2015).[1] In the plea Davis stated: "I touched S.A.'s a thirteen-year-old-child's body with my genitals." Davis also stated "this is a bargained plea" and the prosecutor will recommend an indeterminate ten-year term, suspended, and three years of formal probation, plus a special condition of probation requiring him to "undergo a psychosexual evaluation and follow all the recommendations of the evaluator." Finally, the plea agreement noted Davis

---

[1] The written plea references the 2015 code, though the crime occurred in 2014. The proper reference would be the version of lascivious acts approved by the legislature in April 2013. *See* 2013 Iowa Acts ch. 43 § 2 (making it "unlawful" for "any person sixteen years of age or older" to "[c]ause the touching of the person's genitals to any part of the body of a child with or without the child's consent unless married to each other, for the purpose of arousing or satisfying the sexual desires of either of them").

could "request a deferred judgment, however, this deferral is not agreed to by the State."

At the November 9, 2015 plea hearing, the State moved to orally amend count I of the trial information to lascivious acts with a child and noted the plea agreement contemplated the dismissal of count II. The court sustained the motion to amend and conducted the plea colloquy. Davis acknowledged receiving a copy of the trial information and the minutes of testimony and having those documents available to him during his discussions with defense counsel. Davis acknowledged the terms of the written plea and understood the agreement allowed him to plead guilty to a nonforcible felony with the possibility of a suspended sentence while the original charge was a forcible felony with a mandatory prison term. Davis pleaded guilty, telling the court he engaged in "sexual contact" with S.A. The following colloquy followed:

> THE COURT: And was S. A. a thirteen-year-old child at the time?
> DAVIS: I believe so, yes.
> THE COURT: Do you know that to be the case, that she was thirteen?
> THE DEFENDANT: I know that now.
> THE COURT: Yes . . . . Do you believe the State could prove those facts beyond a reasonable doubt if your case went to trial?
> THE DEFENDANT: Yes.

The court decided: "[B]ased upon the defendant's statements here today, as supplemented by the minutes of testimony, that a factual basis does exist for the court to accept the defendant's plea. Accordingly, the court will accept the

defendant's plea to the amended charge." Davis did not object to the court's incorporation of the minutes of testimony.[2]

The court ordered the preparation of a presentence investigation [PSI] report. According to that report, when asked if he had ever sexually abused anyone, Davis replied: "I did what the trial information said I did." The PSI report recommended a suspended sentence and three years of probation "only if" Davis agreed to a psychosexual assessment and to following all treatment recommendations.

At the January 19, 2016 sentencing hearing, the State informed the court of the plea agreement. The court acknowledged the PSI report and the victim impact statements were in the court file and could "obviously" be considered by the court in reaching its sentencing decision. The State urged the court to enter judgment and impose a suspended sentence with probation, contending the amendment to lascivious acts with a child was a "large concession" based on Davis's lack of criminal history and academic success.

Defense counsel urged the court to grant a deferred judgment and offered numerous letters and testimony in support of Davis. Davis told the court he was earning good grades at a state university, was a member of the bowling club, and expected to graduate in December 2017 with a triple major. As to his future, Davis planned to open his own business, continue working with his current employer, or become a systems analyst. Davis was concerned about the impact

---

[2] Davis made no statements during the hearing acknowledging his acts were "for the purpose of arousing or satisfying the sexual desires of either of them," but the minutes established that element. *See* Iowa Code § 709.8(1)(c).

of a felony conviction on his future plans. Defense counsel had the following exchange with Davis at the sentencing hearing:

> Q. [Y]ou understand that at the time you engaged in these relations with [S.A.], she was thirteen years old, correct? A. I know that now, yes.
> Q. At the time that you engaged in these relations, did you know how old she was? A. No, I did not.
> Q. Did you ever ask? A. No, I did not.
> . . . .
> Q. Did you ever tell Dr. Rogers that she lied to you about her age? A. Yes.
> Q. And was that true? A. That was true.
> . . . .
> Q. So did she tell you how old she was? A. Not physically, no.
> Q. Okay, So she never told you how old she was? A. No I found out from a friend.
> Q. But you told Dr. Rogers she lied about her age, correct? A. Yes.
> Q. . . . If she never told you how old she was, how could she lie about her age? A. I found out from a friend so . . . I was implying she didn't give the age of which she said.
> Q. Okay. And that's what you had told Dr. Rogers? A. Right.

Davis said the physical acts "were isolated to a few incidents." On cross-examination, Davis testified S.A. had told him "she was sixteen, turning seventeen in October." Davis apologized to S.A.'s family.

Defense counsel pointed to Davis's youth and his positive attributes, arguing, "[T]o have a life after this incident . . . justice requires a deferred judgment." Counsel argued his client's submission to a psychosexual evaluation would "ensure public safety."

After taking a recess to read the defense exhibits, the sentencing court addressed Davis. We highlight the statements challenged by Davis on appeal:

Well, Mr. Davis, I have given thought to both your argument and to the State's argument. *I have read the [PSI] report in this matter, and I have read the minutes of evidence.*

You should [understand] you have entered a plea of guilty to the crime of lascivious acts with a child, which is an amendment of the count I charge. This is a class "C" felony. The code section that is applicable is 709.8(1)(c). *And as such, the statements contained in the court file and the minutes of evidence, as far as the court is concerned, are uncontested in view of your plea of guilty.*

And I think that this boils down to, for this court, what is the appropriate punishment given the level or seriousness of the crime that has occurred? It is not uncommon for the Court to give a deferred judgment to a person who has a record similar to yours, no prior convictions, a good scholastic record, a good work record, and a young age, with a full life ahead of him or her.

But in almost all of those circumstances where this court has given a deferred judgment, it is for a substantially less offensive act. It is for something like maybe an assault, maybe driving while intoxicated. In our system, the legislature assigns levels of penalties for crimes based on their seriousness . . . . So [your] class "C" felony is something that is far more serious than . . . a misdemeanor or a "D" felony . . . . And there are relatively few "B" felonies, a few more "C" felonies and many, many, many "D" felonies.

*This is a very serious, serious offense. And I look here at the circumstances, particularly the one that you have pointed to today as to whether or not in some way you were misled under the circumstances into the conduct that you have pled guilty to. And when I read the minutes of evidence—and I had to reread them again after hearing your testimony . . . . And then when I heard your arguments about the misrepresentation of the age and maybe there was some sort of culpability on the victim's behalf, I had to reread those minutes . . . and refresh my memory about those statements, that she said you asked and you asked and you asked again to enter into sexual intercourse with her and she denied you and she denied you and she denied you. And then, finally, she just gave in.*

*And the statements—and I see you're shaking your head and your counsel is shaking his head. But those are the statements in the minutes of evidence. And you have pled guilty in this case. And in there, she says that, ultimately, she felt it was just easier because you represented to her that this wasn't a bad thing to do.*

But for her, it turned out to become a very devastating event. It's changed her life entirely. She no longer attends public school. She no longer has the trust relationships with her parents or her siblings. She's lost many, many, many privileges because of this

incident. She has lost her own personal self-respect. She feels that she is marked in a way that she didn't intend to be marked, at the very tender age of thirteen years.

*When a woman or a man, either one, says, No, to another human being about an act that is proposed to be performed upon them or with them, you heard it said before—it's a campaign that was conducted nationally, "No" means "No." In the minutes of evidence, the act is described as coerced.*

I'm going to acknowledge the fact that you did apologize today, Mr. Davis, but I don't think that you showed genuine remorse. You said all the words that you needed to say, but I'm not so sure that you have the kind of remorse and the depth of understanding for the damage that you have caused, the hurt that you have caused, some of which may not ever be reparable.

I do not find that a deferred judgment is appropriate in this case. I will concur with the State that you have received already substantial concessions in the amending of the charge, and that is where the concessions with this sentencing court will end.

The court entered judgment, suspended the indeterminate ten-year sentence, and ordered three years of supervised probation. Davis now appeals and seeks resentencing.

## II. Analysis

We review sentencing decisions for an abuse of discretion. See *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). "An abuse of discretion will not be found unless we are able to discern that the decision was exercised on grounds or for reasons that were clearly untenable or unreasonable." *Id.* When the district court imposes a sentence within the statutory limits, it is "cloaked with a strong presumption in its favor." *Id.* Davis's sentence is within the statutory limits. "To overcome the presumption," Davis "must affirmatively show that the district court relied on improper evidence such as unproven offenses." *State v. Jose*, 636 N.W.2d 38, 41 (Iowa 2001).

Davis focuses on the sentencing court's description of the sex act as "coerced." Citing *State v. Black*, Davis alleges the sentencing court improperly considered the original, unproven charge of third-degree sexual abuse when sentencing Davis for lascivious acts with a child. *See* 324 N.W.2d 313, 315 (Iowa 1982) (remanding for resentencing where "the sentencing court relied upon charges of an unprosecuted offense that was neither admitted to by the defendant nor otherwise proved"). Davis argues he never admitted the sexual contact was "by force or against the will" of S.A. and further argues the crime of lascivious acts with a child does not require proof the act was done "by force or against the will" of the other person.

Davis's arguments might be persuasive if he had originally been charged with committing sexual abuse in the third degree in violation of Iowa Code section 709.4(1) ("the person performs a sex act . . . by force or against the will of the other person"). He wasn't. The trial information charged Davis with sexual abuse in the third degree in violation of section 709.4(2)(b) ("the person performs a sex act . . . [when] the other person is twelve or thirteen years of age"). Neither the dismissed charge nor the amended charge required proof the act was "by force or against the will" of S.A. Thus, the court's reference to a coerced act did not indicate reliance on an unprosecuted offense.

*Black* is distinguishable. Black was charged with second-degree burglary and indecent exposure; he pleaded guilty to indecent exposure, and the State dismissed the burglary charge. 324 N.W.2d at 314. At sentencing, Black denied the burglary, but the court declined to "ignore the factual basis" giving rise to the dismissed burglary charge. *Id.* at 315. Our supreme court remanded, holding a

sentencing court "shall not consider the dismissed charge nor the facts arising from it unless these facts are admitted to by the defendant or independently proved." *Id.* The sentencing court here made no similar pronouncement linking Davis's sentence to the dismissed charge of third-degree sexual abuse.

A sentencing court must examine "all pertinent information" and then determine an authorized sentence providing the "maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others." Iowa Code § 901.5. The court must weigh "the nature of the offense, the *attending circumstances*," the defendant's age, character, propensity, and chances of reform. *Formaro*, 638 N.W.2d at 725 (emphasis added). In sentencing Davis, the court took into account all of those circumstances. The court reviewed the PSI report, as well as materials compiled by defense counsel.

Davis objects to the court's references to S.A.'s statements in the minutes of testimony, but the plea court specifically incorporated the minutes into Davis's plea, without objection. Thus, facts in the minutes concerning the circumstances in which Davis lasciviously touched his genitals to the child were appropriately considered by the sentencing court in its analysis of the "attending circumstances" of the amended offense. *See State v. Bunce*, No. 14-0645, 2015 WL 799873, at *3 (Iowa Ct. App. Feb. 25, 2015) (rejecting challenge to sentencing court's recognition defendant was a new mom because the defendant's "lack of concern for her child, even as a first-time mother, is part of the attending circumstances of the crime, and therefore a factor the court could consider during sentencing").

Our review of the record shows the sentence was carefully crafted to address Davis's lack of remorse and to protect the public by ordering Davis to follow the recommendations of a psychosexual evaluation. We find Davis has not met his burden to establish the sentencing court relied on impermissible information and conclude the sentence is a sound exercise of the court's discretion. *See Formano*, at 725 (stating a court's "task on appeal is not to second guess the decision made by the district court"). Accordingly, we affirm.

**AFFIRMED.**